IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ERIC MILLER,

        Petitioner,

v.                                    CASE NO. 4:07-cv-120-RH-AK

WALTER A. McNEIL,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 1, a *pro se* Petition for Writ of Habeas

Corpus filed by Eric J. Miller.  The Petition stems from Petitioner's Leon County jury-trial

convictions of two counts of racketeering, seven counts of grand theft, and 22 counts of

securities fraud, for which Petitioner was sentenced to 12 years of imprisonment

followed by 10 years of probation, and substantial costs ($59,419.55 in investigative

costs, $9786.79 in prosecution costs, and $84,254.24 in attorney fees).  Doc. 1; *see*

*Miller v. State*, 764 So. 2d 640, 642 (Fla. 1st DCA 2000) (affirming convictions).  The

Respondent filed a response, supported by the state record, arguing, *inter alia*, that

many of the claims in the Petition were unexhausted and procedurally barred.  Doc. 24.

Petitioner subsequently sought to amend the Petition to delete certain claims.  Doc. 31.

The Court permitted Petitioner to proceed on only five claims without formally amending

the Petition.  *See* Doc. 33.  In these five claims, Petitioner asserts that the trial court

deprived him of his Sixth Amendment right to effective assistance of counsel by refusing

to grant a continuance of the trial (Claim 1), that he was denied due process because the amended information under which he was charged and the prosecutor's statement of particulars were insufficient (Claim 2), that his trial counsel rendered ineffective assistance by failing to file a facially sufficient motion to dismiss the racketeering charges (Claim 3), and that he was denied due process in connection with the imposition of costs by the trial court (Claims 12 and 13).[1]  Docs. 1, 31.  Having carefully considered the Petition, the response, and Petitioner's reply, the Court recommends that the Petition be denied.

## BACKGROUND

The trial proceedings that are relevant to this case are summarized in the state appellate court's opinion:

> Over the period from Appellant's October 1995 arrest to his sentencing in late July 1997, he was represented by at least six attorneys. About 18 months after his arrest, 7 months into his representation by court-appointed counsel Mr. Banks, and 5 weeks before the scheduled start of trial, Appellant moved to discharge Banks and sought a 30-day continuance. Appellant alleged that counsel lacked experience in the specialized areas of law involved in this case, that he had not prepared an adequate defense, and that he had not hired experts to assist him. Attorney Banks filed a written response in which he attempted to refute the allegations and to demonstrate that he was prepared to go to trial. Banks asserted that the challenge of preparing an adequate defense was exacerbated by Appellant's own dilatory tactics, lack of good faith in communicating information, and failure to cooperate.

---

[1]Claims 12 and 13 were titled as Ex Post Facto claims in the Petition, but Petitioner has clarified in his reply that both claims are asserted pursuant to his right to due process under the Fifth and Fourteenth Amendments.  Doc. 31.

The trial court held two [hearings pursuant to *Nelson v. State,* 274 So.2d 256 (Fla. 4th DCA 1973)], where the issues raised in the motion to discharge and in counsel's response were thoroughly discussed. Appellant was permitted to explain in full his several reasons for seeking to discharge court-appointed counsel. Appellant added allegations that Banks was disloyal and had disclosed information protected by the attorney-client privilege. As incompetency was the underlying allegation in the motion, the trial court questioned Appellant and Banks before deciding whether or not there was reasonable cause to believe that counsel was not rendering effective assistance to his client. *See Nelson,* 274 So.2d at 258-59. The court consistently indicated its intent, barring unforeseen circumstances, to begin the trial in mid-May 1997 according to schedule, and Appellant clearly expressed his understanding that this was the plan.

At the first hearing, the court found that court-appointed counsel had done what he could to prepare adequately for trial, and that Appellant lacked good cause to discharge him. Subsequently, in response to Appellant's intermittent comments suggesting his desire to represent himself, the court conducted [an inquiry pursuant to *Faretta v. California,* 422 U.S. 806 (1975)] addressing Appellant's educational level, experience with litigation, and competency to handle the case himself, and "the dangers and disadvantages of self-representation." [*Faretta*, 422 U.S. at 835-36.] Appellant eventually agreed to keep Banks on the case until replacement counsel could be hired. The court stayed depositions and other proceedings for one week to afford Appellant time to hire a lawyer. Sometime between the two hearings, Appellant filed a grievance against Banks with The Florida Bar.

At the second hearing, Appellant renewed his motion to discharge counsel and reiterated his wish to represent himself. At the end of the hearing, the court determined that Appellant had knowingly, intelligently waived his right to counsel, and Banks was discharged. *See State v. Bowen,* 698 So.2d 248 (Fla.1997). Having found that Banks had performed "yeoman's service" in representing Appellant adequately, the trial court refused to appoint replacement counsel. *See Nelson,* 274 So.2d at 259. The court reiterated its intent to start trial on schedule, and Appellant informed the court of his plan to hire another attorney with funds supplied by his family. The hearings on the motion to discharge concluded about two weeks before trial was set to begin.

About a week after these hearings, two attorneys, Messrs. Stafman

and Cook, notified the trial court that they had been retained by Appellant, subject to the condition that the trial be continued because they could not be ready in five days. They requested a continuance. The statewide prosecutor representing the appellee objected on the grounds that Appellant was engaging in delaying tactics and that the State would have difficulty rescheduling its witnesses, many of whom were physicians located in areas of Florida outside Leon County. The motion for continuance was denied. With less than a week before trial was set to begin, Appellant formally retained Stafman and Cook to represent him, with no indication that the court was willing to postpone the start of trial. Immediately before trial, replacement counsel renewed their request for a continuance on the grounds that they needed additional time to prepare an adequate defense. The prosecutor asserted that any lack of preparation on counsel's part was the result of Appellant's own calculated strategy to avoid going to trial. The court refused to grant a continuance, on the ground that Appellant could have hired replacement counsel sooner.

Just before trial, Stafman and Cook filed a motion for bill of particulars alleging that every count of the amended information was fatally defective for failing to give sufficient notice of the facts underlying the crimes with which Appellant was charged. After the motion was granted, the State furnished a statement of particulars. Defense counsel's objection to the statement as insufficient was denied.

*Miller*, 764 So. 2d 642-44.  The state appellate court rejected Petitioner's argument that he was denied the effective assistance of counsel when the trial court, in the exercise of its discretion, refused to grant a continuance.  *Id.* at 644.  The court found that Petitioner "was afforded effective assistance of counsel at all critical stages of the proceedings below."  *Id.*  The court determined that the trial court did not abuse its discretion in finding the State's statement of particulars sufficient and denying Petitioner's motion for a more particular statement.  *Id.* at 645.  The court affirmed Petitioner's convictions and sentence, and remanded the case only for corrections to the written judgment of sentence.  *Id.*  The Florida Supreme Court denied review.  *Miller v. State*, 780 So. 2d

914 (Fla. 2001).

Petitioner then filed, through counsel,[2] a motion and a supplemental motion
pursuant to Fla. R. Crim. P. 3.850 alleging that he was denied the effective assistance
of trial counsel due to his appointed counsel's failure to adequately prepare for trial and
the court's denial of a continuance to allow newly-retained counsel sufficient time to
prepare. Resp. Exh. K. Petitioner argued that under *United States v. Cronic*, 466 U.S.
648 (1984), the trial court's refusal to allow newly-retained counsel sufficient time to
prepare, coupled with his prior counsel's lack of preparation, was so egregious that
prejudice should be presumed. *Id.* As his second ground for relief, Petitioner asserted
that his trial counsel rendered ineffective assistance by failing to file a sufficient motion
to dismiss the racketeering charges. *Id.*

The court did not conduct an evidentiary hearing, but relied on portions of the
record and the parties' arguments in denying postconviction relief. The court
determined that Petitioner had failed to point to any specific instances where counsel
performed deficiently during trial, and that Petitioner had not presented the
"extraordinary circumstances" necessary to find a denial of his Sixth Amendment right to
counsel in the absence of specific instances of deficient performance pursuant to
*Cronic. Id.* The court also determined that the claim had been raised and rejected on
direct appeal. *Id.* As to Petitioner's second claim, the court determined that trial
counsel had in fact filed a facially sufficient motion to dismiss the racketeering counts,

---

[2]Petitioner was represented by different counsel in the postconviction
proceedings.

which the trial court denied.  *Id.*  The court also noted that trial counsel raised the same issues in a motion for judgment of acquittal, and preserved the issues for review on appeal.  *Id.*  Accordingly, the court found that counsel had not performed deficiently in challenging the racketeering counts.  *Id.*  The District Court of Appeal affirmed *per curiam* without opinion.  *Miller v. State*, 837 So.2d 967 (Fla. 1st DCA 2002).

Petitioner pursued other postconviction motions, only one of which is relevant to this case and which will be discussed in greater detail below.  Respondent concedes that Petitioner's postconviction proceedings in the state court tolled the § 2244(d)(1) one-year federal limitations period, and that the instant petition was timely filed.

## DISCUSSION

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "A state-court decision will certainly be contrary to

. . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative of clearly established federal law. Instead, this Court must look to the specific holdings of Supreme Court cases themselves. If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 76 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28

U.S.C. § 2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id.* at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Finally, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (citing 28 U.S.C. §§ 2254(b)(1) & ©). To fully exhaust state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. In addition, "the federal claim must be fairly presented to the state courts," and it must be "the same claim." *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also*

*Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*). In other words, to exhaust

state court remedies fully, the petitioner must "'make the state court aware that the

claims asserted present federal constitutional issues.'" *Jimenez v. Florida Department*

*of Corrections*, 481 F.3d 1337, 1342 (11th Cir. 2007) (citation omitted). To raise a

federal issue, the petitioner

> can easily indicate the federal law basis for his claim in a state court
> petition or brief, for example, by citing in conjunction with the claim the
> federal source of law on which he relies or a case deciding such a claim
> on federal grounds, or by simply labeling the claim "federal."

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

Claims which have not been fairly presented to the state court but are defaulted

from state court review are considered technically exhausted because no remedies are

available for purposes of § 2254©. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

*See also White v. State*, 664 So.2d 242, 244 (Fla. 1995) (claims that could have or

should have been raised on post-conviction and were not so raised are procedurally

defaulted). However,

> In all cases in which a state prisoner has defaulted his federal claims in
> state court pursuant to an independent and adequate state procedural
> rule, federal habeas review of the claims is barred unless the prisoner can
> demonstrate cause for the default and actual prejudice as a result of the
> alleged violation of federal law, or demonstrate that failure to consider the
> claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.

Because some of Petitioner's claims raise the issue of counsel's

effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is also

appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id.* at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." *Id.* When the court

"can conceive of a reasonable motivation for counsel's actions," it can deny the

claim of ineffectiveness without evidentiary hearing.  *Id.*  "An ambiguous or silent

record is not sufficient to disprove the strong and continuing presumption...that

[counsel] did what he should have done and that he exercised reasonable

professional judgment."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.15

(11th Cir. 2000) (en banc).  "The relevant question is not whether counsel's

choices were strategic, but whether they were reasonable."  *Roe v. Flores-*

*Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining

whether counsel's actions were indeed reasonable, as "[a]bsolute rules would

interfere with counsel's independence–which is also constitutionally

protected–and would restrict the wide latitude counsel have in making tactical

decisions."  *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a

lawyer's strategy, [the Court] need not attempt to divine the layer's mental

processes underlying the strategy."  *Chandler*, 218 F.3d at 1315 n.16.  "No

lawyer can be expected to have considered all of the ways [to provide effective

assistance]."  *Id.*  Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some
> other reasonable courses of defense (that the lawyer did not think
> of at all) existed and that the lawyer's pursuit of course A was not a
> deliberate choice between course A, course B, and so on.  The
> lawyer's strategy was course A.  And [the Court's] inquiry is limited
> to whether this strategy, that is, course A, might have been a
> reasonable one.

*Id.*

To show prejudice, a defendant must show more than simply that

counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id.* Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

In a narrow range of circumstances, however, such as actual or constructive denial of counsel, state interference with counsel's assistance, or actual conflicts of interest, courts presume prejudice to the defendant. *See Strickland,* 467 U.S. at 692. In such situations, prejudice is so likely that the "case-by-case inquiry into prejudice is not worth the cost." *Id.* In a companion case to *Strickland,* the Supreme Court held that certain circumstances are so likely to prejudice the accused that litigating their effect is not justified, such as where: (1) there is a "complete denial of counsel;" (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" and (3) counsel is called on to render assistance under circumstances where competent counsel very likely could not. *United States v. Cronic,* 466 U.S. 648, 659-60 (1984).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevai l. . . are few and far between." *Chandler*, 218 F.3d at 1313 (11th

Cir. 2000). This is because the test is not what the best lawyers would have done

or even what most good lawyers would have done, but rather whether a

reasonable lawyer could have acted in the circumstances as defense counsel

acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).

## Claims (1) and (3): Ineffective Assistance of Counsel

In his first ineffective-assistance claim, Petitioner contends that the trial

court deprived him of his right to the effective assistance of counsel by refusing

to grant a continuance of the trial after he discharged his retained counsel, Mr.

Banks, nine days before trial and retained new counsel one week before trial.

Petitioner contends that:

> The record is replete with instances where the inability of counsel to
> effectively prepare manifested itself in specific instances of
> ineffective assistance of counsel, most importantly the RICO counts
> which counsel attempted to attack. Had counsel been afforded
> sufficient time, they would have filed a motion attacking the alleged
> RICO enterprise, and the lack of continuity of the enterprise, in the
> prosecution. But for the interference with the ability of counsel to
> prepare for trial, a strong possibility exists that [Petitioner] would not
> have been found guilty of any of the counts for which he now
> stands convicted, particularly the RICO counts. As evidenced by
> the face of the record, court-appointed attorney, James Banks,
> prepared no legal defense, failed to depose key witnesses, failed to
> hire a financial expert . . . and made statements before the court
> and the prosecutor conceding guilt of his client.

Doc. 1 at 6.

Although Petitioner conclusionally asserts that the record is "replete" with

instances of ineffective assistance of counsel stemming from the trial court's

denial of a continuance, he has not provided the Court with citations to the record

or any description of such instances. It is not the Court's responsibility to sift through the record of Petitioner's three-week trial to identify any instances that might support Petitioner's claims.

Petitioner further contends, however, that the circumstances of his case are such that he need not identify particular instances where his trial counsel's performance caused him prejudice. Petitioner argues that "denial of a motion for continuance of trial may vitiate effect of fundamental right of a person to assistance of counsel." Reply, Doc. 31, at 8 (citing *U.S. v. Verderame*, 51 F.3d 249 (11th Cir. 1995)). Petitioner also argues that his claim is governed by *Cronic*, pursuant to which prejudice may be presumed because his counsel was "placed in circumstances in which competent counsel very unlikely could render effective assistance." *Id*.

In *Verderame*, the district court denied a continuance to a defendant facing charges that he participated in two major drug trafficking conspiracies and the forfeiture of almost all of his property, even though there were only 34 days between arraignment and trial. The Eleventh Circuit held that the trial court's denial of a continuance "eviscerated one of the Sixth Amendment's essential safeguards" because it was not possible for the defendant's counsel to prepare a defense. 51 F.3d at 252. The Eleventh Circuit explained the standard by which a claim that the denial of a continuance violated the Sixth Amendment must be evaluated:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that

violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. <u>There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied</u>.

<u>Id</u>. (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (emphasis added)). "To prevail on such a claim, a defendant must show that the denial of the motion for continuance was an abuse of discretion which resulted in specific substantial prejudice." *Id.* (citing *United States v. Bergouignan,* 764 F.2d 1503, 1508 (11th Cir.1985)).

Again, Petitioner in this case points to no "specific substantial prejudice." Further, the circumstances of Petitioner's case, as reflected in the record of the hearings on his counsels' motions for continuance, establish that the facts of this case are readily distinguishable from *Verderame*. As noted above, Petitioner was arrested in October 1995 and was thereafter represented by a succession of retained and appointed counsel. Mr. Banks was ultimately appointed as conflict counsel for Petitioner, and represented Petitioner for about seven months until, shortly before trial, Petitioner sought Mr. Banks' discharge. After succeeding in having Mr. Banks discharged – with repeated admonishments by the trial court that the trial date would not be continued -- Petitioner retained counsel, Messrs. Stafman and Cook, who made their first appearance on his behalf less than one week before trial. Resp. Exh. D. Counsel appeared at a hearing before the trial

court for the limited purpose of seeking a continuance of the trial date, which Mr.

Stafman stated was a contingency of their representation of Petitioner.  The

prosecutor opposed the continuance, based on the length of time the case had

been pending, and delays incurred due to Petitioner's retention and discharge of

various counsel.  The prosecutor argued that Mr. Banks had engaged in

extensive trial preparation prior to his discharge, including taking dozens of

depositions of the victims.   The prosecutor stated that the state's case would be

seriously prejudiced by a continuance, due to the difficulties attendant in securing

the appearance of the 50 to 60 victim-witnesses, most of whom were physicians

practicing in different parts of the state.   At the end of the hearing, the trial court

made the following findings:

> I am fairly familiar with this case and the steps that have occurred in this matter, and I think the easiest thing in the world would be for me to grant a continuance.  But, I'm not going to do it.
>
> [Petitioner] has known from day one the difficulties in this case.  He has known from day one the problems that he had with lawyers.  He had one of our better criminal defense lawyers made available to him by the county.  For whatever reason, he chose to dismiss him.
>
> [Petitioner] has been told by me for more than a month that there would not be a continuance in this matter. . . .  I'm sorry Mr. Stafman, you are not going to get involved in this unless you can take it with the trial scheduled Monday.  We are ready to go.  The easiest thing in the world for me to do would be to grant the continuance because I would be through with it forever.  And I can assure you I am not looking forward to the next three weeks.  But, I think, based on what I know of the history of this case, this case has got to go to trial.  There has been adequate time for [Petitioner] to get ready for this trial and we are going.

*Id.*

Petitioner's counsel renewed their motion for continuance on the first day of trial.  Resp. Exh. C.  Mr. Stafman asserted that he was "woefully unprepared" for trial.  Counsel also called into question the extent of Mr. Banks' trial preparation, and in particular complained that "Mr. Banks has not engaged in any meaningful pretrial motion practice," and had not engaged a financial expert. Counsel noted that Mr. Banks had taken 78 depositions, but had not deposed "a lot of important people."   In response, the prosecutor noted that while Mr. Banks may not have filed extensive motions, he had succeeded in negotiating the dismissal of more than 80 counts in the original information, and had been forthright with the State in handling discovery, as a result of which the State made "certain concessions" and gave Mr. Banks work product that otherwise would not have been made available to the defense.

The trial court again denied a continuance, explaining that:

> [Petitioner] has had more than adequate opportunity to make the arrangement ahead of time to retain you to represent him.  He had that opportunity some approximately a year ago and chose not to do it at that time. [Petitioner] since that time has had more than adequate opportunity.  I have discussed this matter with him on numerous occasions.  I advised him that he was going to trial in April of this year.  And it's his choice as to how he has proceeded I this case.

> And I do not feel that your inability to prepare in the short time that he has given you is a reason for [Petitioner] not to go to trial. . . . I think [the prosecutor] has adequately explained Mr. Banks' strategy in dealing with him.  And I certainly feel that that's an adequate reason for the way Mr. Banks proceeded, but I'll be happy to hear any evidence that you may have along that line. . . . [T]he Sixth Amendment right is not the concern at this point.  It's

[Petitioner's] unwillingness to make these arrangements timely in
order to proceed.

*Id.*

The trial court in this case was intimately familiar with the history of the
case and the events leading to Petitioner's discharge of his appointed counsel,
eleventh-hour retention of new counsel, and new counsel's motion for
continuance. The trial court determined that in light of the circumstances as a
whole, a continuance was not warranted. *See Ungar*, 376 U.S. 589. In view of
Petitioner's failure to point to specific substantial prejudice resulting from the trial
court's exercise of discretion in denying a continuance, Petitioner has failed to
demonstrate that the state courts' rejection of this claim was contrary to, or an
unreasonable application of clearly established federal law, or that the state
courts unreasonably determined the facts in light of the evidence presented.
Petitioner is therefore not entitled to federal habeas relief on this claim.

Petitioner's second ineffective-assistance claim concerns his trial
counsel's alleged failure to file a facially sufficient motion to dismiss the
racketeering charges. Specifically, Petitioner argues that counsel failed to attack
the RICO counts on the ground that the state failed to allege and prove, as a
matter of law, the requisite element of continuity of the alleged criminal
enterprise, and failed to name or charge Florida Medfax Network, Inc. as the
continuous enterprise.

The trial court rejected this claim on postconviction review because the

record established that counsel did file a facially sufficient motion to dismiss arguing that the state had failed to allege "continuity" in the RICO counts, and then reasserted the argument in a motion for judgment of acquittal, specifically arguing that Petitioner was entitled to an acquittal because the state failed to include Florida Medfax Network in the information. Counsel also filed a motion for new trial and renewed motion for judgment of acquittal raising the same issues. Resp. Exh. K.

Even if Petitioner were correct that counsel could have asserted other grounds in a motion to dismiss, he has pointed to no authority in support of the proposition that a different motion likely would have resulted in dismissal of the racketeering charges. Accordingly, Petitioner has failed to show, pursuant to *Strickland*, that there is a reasonable probability that but for counsel's asserted errors the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner has failed to demonstrate that the state courts' rejection of this claim was contrary to, or an unreasonable application of clearly established federal law, or that the state court unreasonably determined the facts in light of the evidence presented. Petitioner is therefore not entitled to federal habeas relief on this claim.

## Claim (2): Statement of Particulars

Petitioner contends that the statement of particulars furnished by the prosecutor on the day of trial was constitutionally insufficient because it amounted to "a summary of the statutory crimes without details as to specific

offenses alleged." Doc. 1. He argues that the state had a "constitutional obligation to inform Petitioner of the specifics of the charges, not just a list of generic statutes." Doc. 31. The state court on direct review held that the trial court did not abuse its discretion in denying Petitioner's motion for a more specific statement prior to trial. *Miller*, 764 So. 2d at 645.

The Sixth Amendment guarantees an accused the right "to be informed of the nature and cause of the accusation." However, the "sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of jurisdiction." *Heath v. Jones*, 863 F.2d 815, 821 (11th Cir. 1989). The scope of a federal court's habeas review of a state indictment or information extends only to a determination whether a petitioner received fair notice of the charges against him to permit him to prepare a defense. In undertaking that review, a federal court is not limited to an examination of the indictment or information because the right to notice of the charges can be satisfied by other means, including a bill of particulars, discovery, and preliminary examination. *See Dowell v. Lensing*, 805 F. Supp. 1335, 1343 (M.D. La. 1992) (citing *Liner v. Phelps*, 731 F.2d 1201 (5th Cir. 1984)). Moreover, the denial of a bill of particulars in state court does not rise to "constitutional proportions so as to constitute grounds for federal habeas relief" absent "a showing of clear abuse of the trial court's sound discretion, or prejudice to substantial rights of the defendant." *Dillen v. Wainwright*, 449 F.2d 331, 332 (5th

Cir. 1971).[3]

Petitioner has failed to show that the trial court abused its discretion or that his substantial rights were prejudiced when the trial court declined to order the prosecutor to provide a more-detailed statement of particulars on the day of trial. The record reflects that the trial court considered the prosecutor's argument that the extensive pretrial discovery conducted by the parties, which included dozens of depositions, had provided notice of the specifics of the charges that the State intended to prove, and following such argument the trial court determined that the statement of particulars was sufficient. *See* Resp. Exh. C (transcript of trial proceedings, first day). The fact that Petitioner was ultimately unsuccessful in defending against the charges does not establish that he had insufficient notice of them such that he was prevented from preparing a defense, particularly in light of the extensive discovery undertaken in the case. Petitioner has failed to demonstrate that the state courts' rejection of this claim was contrary to, or an unreasonable application of clearly established federal law, or that the state court unreasonably determined the facts in light of the evidence presented. Petitioner is therefore not entitled to federal habeas relief on this claim.

---

[3] Fifth Circuit decisions rendered prior to September 30, 1981 are binding precedent on the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

## Claims (4) and (5): Costs Imposed in Sentence

For his fourth and fifth claims, Petitioner contends that he was denied due process in connection with the imposition of $59,419.55 in investigative costs and $9,786.79 in prosecution costs because the trial court did not specify the statutory authority for imposing such costs in its oral pronouncement of sentence or in the written judgment, in violation of state law and the U.S. Constitution. Doc. 1, 31.  Petitioner contends that he was denied due process in connection with the imposition of $84,254.24 in attorney fees that the county paid to his court-appointed counsel, because the trial court failed to cite the statutory authority for assessing such costs and failed to afford Petitioner a hearing on such costs.  *Id.*   Petitioner contends that he contested the attorney fees and costs at sentencing and the trial court told defense counsel that if he wanted to dispute the amounts he could request a hearing, but no hearing was requested. The Respondent contends that these claims are unexhausted and are now procedurally barred because Petitioner never requested a hearing in the trial court, did not appeal this aspect of his sentence, and did not raise the issues in a Rule 3.850 motion.  Doc. 24.

As noted above, issues of state law are not cognizable on federal habeas review.  Moreover, Petitioner concedes that he did not raise these issues on direct appeal or in a Rule 3.850 motion, but argues that he did raise the claims in a Rule 3.800(a) motion to correct illegal sentence.  In denying this motion, which was Petitioner's second Rule 3.800 motion, the trial court held that "[s]uch a

claim is not cognizable in a motion to correct illegal sentence pursuant to Rule 3.800(a) as such an error would not constitute an illegal sentence. *See Blakley v. State*, 746 So.2d 1182 (Fla. 4th DCA 1999). Accordingly, this claim is barred from consideration by the Court." Resp. Exh. W.

Under Florida law, "an illegal sentence subject to correction under [Rule 3.800(a)] must be one that no judge under the entire body of sentencing laws could possibly impose." *Wright v. State,* 911 So.2d 81, 82 (Fla. 2005). The rule's main purpose is to correct sentences imposed in excess of the legal maximum, and it was "this fundamental concern to correct a sentence in excess of the legal maximum that provided the primary example for the rule's policy of providing unlimited time to challenge a wrongful imprisonment." *Id.* at 84. Petitioner points to no authority that undermines the trial court's determination that his claims regarding the imposition of costs and attorney fees were not cognizable under Rule 3.800(a).

Because the state court found these claims to be procedurally barred pursuant to an independent and adequate state rule, federal habeas review is also barred unless Petitioner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 732. Petitioner makes no argument that he meets this standard. *See* Doc. 31. Accordingly, the Court concludes that federal review of these claims is barred.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that the

petition for writ of habeas corpus, Doc. 1, be **DENIED**, and this cause be

**DISMISSED WITH PREJUDICE**.

**IN CHAMBERS**, at Gainesville, Florida, this ___*3ʳᵈ*___ day of February, 2010.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**